Filed 12/28/20  P. v. Parker CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C090580 |
| Plaintiff and Respondent, | (Super. Ct. No. 18F6476) |
| v. | |
| GILBERT PARRISH PARKER, JR., | |
| Defendant and Appellant. | |

Defendant Gilbert Parrish Parker, Jr., pleaded no contest to assault with force likely to cause great bodily injury in exchange for probation and no additional jail time. The signed plea agreement included a provision typically known as a *Cruz* waiver (see *People v. Cruz* (1988) 44 Cal.3d 1247), on which the trial court relied to sentence defendant to three years in prison after finding him in violation of the waiver's terms. Defendant claims error on multiple grounds related to the trial court's findings and subsequent sentence.  As we will explain, we disagree and affirm the judgment.

1

## BACKGROUND

We dispense with the facts of the underlying offenses as they are not relevant to our analysis. It suffices to say that the prosecution charged defendant by information with felony criminal threats (Pen. Code, § 422; count one)[1] and first degree residential burglary (§ 459; count two). The information also alleged defendant had a prior strike based on a 2002 theft of a firearm conviction (§ 1170.12). The amended information added assault with force likely to cause great bodily injury. (§ 245, subd. (a)(4); count three.)

*Defendant's Plea Agreement and Plea*

On February 11, 2019, defendant executed a plea agreement; he agreed to plead no contest to the added assault charge in exchange for dismissal of the remaining charges and allegations. The disposition of the plea agreement states in handwritten, capital letters: "release today, probation and no additional jail on initial sentencing." Defendant initialed next to paragraph one, which states "I UNDERSTAND THAT AS A RESULT OF MY PLEA [¶] 1. My maximum period of incarceration is 4 years, x months, and/or 364 days."

Paragraph 33 (hereafter the section 1192.5 advisement) was initialed by defendant and advised: "(ACCEPTANCE OF PLEA) At the time of my sentencing, the judge may withdraw approval of this plea. However, if the judge does so, I will be allowed to withdraw my plea and this case will proceed from the point where my plea was taken."

Paragraph 39 (hereafter the *Cruz* waiver) was initialed by defendant and stated defendant's understanding that: "39. If I fail, without good cause, to show up for my pre-sentence interview (PSI), or fail to show up for court at the time and date set for my sentencing, or if I commit another crime, or violate the conditions of my release pending

---

[1] Undesignated statutory references are to the Penal Code.

sentencing, my plea will remain, but the judge who sentences me will not be bound by any sentencing agreements or indications and may sentence me to the maximum sentence allowed by law on the charge(s) to which I have pled."

Defendant signed the agreement as well as its acknowledgments section, which was marked to read:  "I affirmatively state that I have ~~read [or have~~ had read to me] and understand the contents of this plea form, and that I am making this plea agreement freely and entering this plea as indicated because I believe it is within my best interest to do so." Defense counsel signed the statement:  "I am the attorney of record for the defendant; I have explained each of the rights listed in this plea form to the defendant."

At the change of plea hearing held on the same day, the trial court stated:  "I am going to order that you be released today.  You are going to receive probation with no additional jail time on initial sentencing.  So that means when you come back for sentencing, unless you've done something we don't know of, then you'll have no additional jail time."  The court then discussed the rights defendant was giving up by entering a plea, including the rights to a jury trial, to confront adverse witnesses, and to remain silent.

The trial court explained, "worst-case scenario, if you were to violate probation, what could happen is you could end up staying in state prison for a sum total of four years.  That would be at half time.  Okay?  Do you understand those consequences?"  In response, defendant stated, "Yes, ma'am."  Defense counsel did not join the plea, but confirmed in response to the court's question that he had explained to defendant the rights and defenses he had, and that he believed defendant fully understood "going forward what he [was] doing here."

The trial court then found defendant had "knowingly and intelligently given up his rights, and he's aware of the consequences of his plea" and accepted the plea.

*The Pre-sentencing Hearing on the Violations*

On August 15, 2019, the trial court held a hearing to determine whether defendant had violated the *Cruz* waiver, based on a petition filed by the People alleging that he had committed new offenses while pending sentencing; at the hearing the prosecutor said two new cases had been "filed on" defendant but that both cases had subsequently been dismissed.

The trial court asked the prosecutor what charges he was "seeking to suggest [defendant] committed by a preponderance of the evidence that would establish a violation of his *Cruz* waiver." The prosecution claimed defendant violated the agreement by engaging in illegal conduct after his release by possessing a device used in the injection of controlled substances (Health & Saf. Code, § 11364, subd. (a)); disturbing the peace (§ 415, subd. (3)); and disturbing the peace by public intoxication (§ 647, subd. (f)). Defense counsel did not object to the preponderance of the evidence standard of proof announced by the court.

Officer Jason Rhoads testified that he observed defendant toss two items that Rhoades concluded were a glass smoking pipe with residue and a butane lighter. On cross-examination, Rhoades testified he photographed the glass device, destroyed it afterwards, and did not test it for the presence of narcotics. Rhoades also testified he did not see defendant light the device, nor did he find that defendant possessed any controlled substances.

Officer Jacob Ruiz testified that he observed defendant engaged in a verbal altercation with a security guard in which defendant yelled obscenities and challenged the security guard to a fight. Ruiz testified that he observed that defendant had rapid eye and muscular movement and a wide variety of emotions "within a mere seconds of one another," from which Ruiz concluded defendant was under the influence of a central nervous stimulant.

4

Defense counsel argued the People had not satisfied their burden of proof, and stated, "the burden of proof by the People is beyond -- or preponderance of the evidence." The trial court found, based on the officers' testimony regarding the three crimes, that "all three of the bases for the *Cruz* waiver violation . . . have been sustained by sufficient evidence." A sentencing hearing was set.

*Sentencing Hearing*

At the beginning of the sentencing hearing held on September 23, defense counsel explained he was prepared to file a motion to withdraw defendant's plea, but that defendant did not want to wait and instead wanted to be sentenced that day. Defense counsel stated defendant "did enter into an agreement that included a guarantee of probation and no additional jail on sentencing[,]" however, "because of the operation of his *Cruz* [w]aiver and his commission of a possession of a pipe, as found true by the [trial] [c]ourt, and disturbing the peace, he is now before the [c]ourt pending sentencing on the [assault] that he entered a plea to." He asked the court for "consideration" of mitigating circumstances that included defendant's cognitive issues and defendant's prior success on probation.

The trial court denied probation and sentenced defendant to the midterm of three years in state prison rather than the upper term, finding "some mitigation." Defendant was ordered to pay a $300 restitution fine (§ 1202.4), a $40 court operations assessment (§ 1465.8), and a $30 criminal conviction assessment (Gov. Code, § 70373). The court imposed and suspended a matching parole revocation fine of $300. (§ 1202.45.) Defense counsel did not object to the sentence at any point.

Defendant timely appealed but did not obtain a certificate of probable cause from the trial court. Defense counsel checked the box on the notice of appeal stating "[t]his appeal is based on the sentence or other matters occurring after the plea that do not affect the validity of the plea."

5

**DISCUSSION**

Defendant's headed argument states that "[b]ecause the sentence exceeded the punishment agreed upon in appellant's plea bargain in violation of appellant's federal constitutional right to due process of law, this court should specifically enforce the plea agreement or remand with instructions that the court comply with section 1192.5." In various subheadings, he contends that he did forfeit his challenge to the sentence by failing to object because the trial court did not properly advise him pursuant to section 1192.5, that he did not waive his rights under section 1192.5 or *Cruz* , and that there was insufficient evidence to support the finding that he violated the *Cruz* waiver because none of the crimes were proven beyond a reasonable doubt to a jury.[2] We disagree with each contention and affirm the judgment.

I

*Certificate of Probable Cause*

As a threshold matter, the People contend defendant was required to obtain a certificate of probable cause (CPC) because the true nature of his challenge is to the validity of his plea.

A defendant must obtain a CPC to appeal from a judgment entered on a guilty plea or plea of no contest unless the appeal falls within an exception. (§ 1237.5; Cal. Rules of Court, rule 8.304(b)(4).) A defendant need not comply with section 1237.5 if the appeal is based on "[g]rounds that arose after entry of the plea and do not affect the plea's validity." (Cal. Rules of Court, rule 8.304(b)(4)(B).)

---

[2] Although defendant argues briefly that the trial court erred in finding defendant violated the *Cruz* waiver by failing to appear at the sentencing hearing, the factual basis for this assertion is not supported by the record. As we have outlined above, the hearing regarding the alleged violation of the *Cruz* waiver *preceded* the sentencing hearing. Further, although the trial court did find defendant had failed to appear at a different hearing, it concluded defendant violated the *Cruz* waiver based on his commission of crimes, not any failure to appear.

In general, a defendant must obtain a CPC to challenge a sentence where the plea agreement includes a specified sentence, because "any challenge to that sentence attacks a term, and thus the validity, of the plea itself." (*People v. Buttram* (2003) 30 Cal.4th 773, 789.) In contrast, a CPC "is not required to challenge the exercise of individualized sentencing discretion within an agreed maximum sentence." (*Id.* at p. 790.)

Here, although the parties bargained for a specific sentence at the time of entry of plea, the plea agreement contained a *Cruz* waiver that defendant was found to have violated. Consequently, he did not receive the probationary sentence he had bargained for absent his violation of the agreement. The prison sentence that he now challenges, although contemplated as a *possibility* at the time of the plea, was not an agreed upon condition thereof; it was not even the agreed upon result if he violated his *Cruz* conditions. A sentence up to the maximum was permitted for a violation and defendant received the middle term. He was not required to obtain a CPC to bring this appeal.

II

*Defendant's Section 1192.5 and Cruz Waiver Claims*

A. *Forfeiture*

A defendant forfeits a claim of error if he fails to object to a trial court's discretionary sentencing choice. (*People v. Scott* (1994) 9 Cal.4th 331, 353; *People v. Sperling* (2017) 12 Cal.App.5th 1094, 1100-1102.) Although defendant argues that he was not adequately advised pursuant to section 1192.5, as we explain below, we disagree. Thus we conclude he has forfeited his claim on appeal because he did not object to the trial court's decision to impose a prison term after finding a *Cruz* violation.

Nonetheless, we reach the claim of error below in order to explain why we disagree with defendant's challenge to his section 1192.5 advisement.

B. *Section 1192.5 and Cruz*

Section 1192.5 provides that a trial court may not impose punishment more severe than that agreed upon by the parties at the time of entry of plea without giving notice to

defendant and providing him the ability to withdraw his plea. At entry of plea, the court must advise defendant that (1) its approval (of the plea agreement by accepting the plea) is not binding, (2) it may withdraw its approval in the light of further consideration of the matter, and (3) in such cases the defendant shall be permitted to withdraw his plea if he desires to do so. (§ 1192.5)

The *Cruz* decision permits a defendant to enter a limited waiver of this statute with the agreement of both parties to the plea, and agree to a sentence in excess of the term that was bargained for if he or she willfully fails to appear for sentencing or violates other agreed-upon conditions. A *Cruz* waiver is permitted as long as it is entered in a knowing and voluntary fashion. (*People v. Cruz, supra*, 44 Cal.3d at p. 1254, fn. 5; see *People v. Vargas* (2007) 148 Cal.App.4th 644, 649; *People v. Mosby* (2004) 33 Cal.4th 353, 361 [waiver of statutory rights must be voluntary and intelligent] (*Mosby*)); see also *People v. Howard* (1992) 1 Cal.4th 1132, 1177-1178.)

The knowing nature of the waiver must be determined from the totality of the circumstances. (*People v. Davis* (2009) 46 Cal.4th 539, 586; *Mosby, supra,* 33 Cal.4th at p. 361; *People v. Howard, supra,* 1 Cal.4th at pp. 1177-1178.) Explicit advisal of the right being waived is not necessary for a knowing and voluntary plea. (*Howard*, at pp. 1177-1178 [plea valid even though no explicit advisal of constitutional right].) For the *Cruz* waiver to be valid, it was not necessary for the court to expressly advise a defendant that he has a right under section 1192.5 to withdraw his plea if, at sentencing, the trial court withdraws its approval and proposes a higher sentence. (See *Mosby*, at p. 361; *Howard*, at pp. 1177-1178.) There is no requirement for a "talismanic" recitation of the right being waived. (*Howard*, at p. 1180.)

The trial court may rely on a validly executed waiver form as a sufficient advisal of rights. (*People v. Cisneros-Ramirez* (2018) 29 Cal.App.5th 393, 402-403; *Mosby, supra,* 33 Cal.4th at pp. 360-361.) The court need not specifically review the waiver with the defendant when both the "defendant and his attorney have signed a waiver form, both

8

have attested to the defendant's knowing and voluntary relinquishment of his rights, and the trial court's examination of defendant and his attorney raised no questions regarding defendant's comprehension of his rights or the consequences of his plea." (*Cisneros-Ramirez*, at p. 402.) We independently examine the entire record to determine whether the defendant knowingly and voluntarily waived his rights. (*People v. Elliott* (2012) 53 Cal.4th 535, 592.)

C. *Analysis*

Here, as we have explained, defendant was advised in a signed, written plea agreement, in a provision that he separately initialed at the time of his sentencing, that the trial court could withdraw approval of his plea, and that if the court did withdraw its approval, defendant could withdraw his plea. The section 1192.5 waiver was adequate. Further, given the *Cruz* waiver and defendant's violation of its terms, the section 1192.5 waiver is largely irrelevant, as we have explained. The real issue is the adequacy of defendant's *Cruz* waiver.

As we detailed above, the *Cruz* waiver was contained in the plea agreement signed by defendant and counsel and was separately initialed by defendant; it provided that if while pending sentencing he were to "commit another crime" his plea would remain, but the judge would not be "bound by any sentencing agreements or indications and may sentence" him up to the maximum term, in this case four years. The language of the provision was clear. Further, at the change of plea hearing held on the same day, the trial court explained the agreed upon sentence (same day release, a sentence of probation with no additional jail time), but included the caveat that "unless you've done something we don't know of" when referring to the absence of jail time. The court went on to explain the "worst-case scenario," which was four years in prison. When asked if he understood, defendant responded in the affirmative. Defense counsel confirmed in response to the court's question that he had explained to defendant the rights and defenses he had, and

9

that he believed defendant fully understood "going forward" what was going on, i.e., the plea agreement and its terms.

The subsequent conduct of defendant and his counsel also demonstrated their understanding and acceptance of the *Cruz* waiver. When they returned for sentencing, defendant acknowledged through his attorney that he was subject to a higher sentence because he had committed crimes while on release, and he did not object to the likelihood of a higher sentence, but instead agreed to the increased exposure. At the beginning of the sentencing hearing, counsel explained he was prepared to file a motion to withdraw defendant's plea, but that defendant wanted to be sentenced that day. Counsel acknowledged that defendant had entered into a probationary plea agreement but that "because of the operation of his *Cruz* [w]aiver and his commission of a possession of a pipe, as found true by the [trial] [c]ourt, and disturbing the peace, he is now before the [c]ourt pending sentencing on the [assault] that he entered a plea to." Although counsel asked for mitigation, he did not object to the three-year sentence.

This failure to object not only forfeits his claim on appeal, as we discussed earlier, it also demonstrates that defendant understood and accepted that he would receive a more severe sentence if he were found by the judge to have committed another crime. Consideration of the totality of the circumstances confirms that defendant knowingly and voluntarily agreed that he could receive a higher sentence and would not be permitted to withdraw his plea if he were found to have committed another crime before he was sentenced in this case.

D. *Burden of Proof*

Defendant also contends that any violation of the *Cruz* waiver had to be proved to a jury beyond a reasonable doubt. Defendant does not support that argument with any authority, and we see none. First, defendant agreed in writing that he could receive a more severe sentence if he failed to appear or "commit[ted] another crime." This language sets the standard of proof as lower than beyond a reasonable doubt, as

10

defendant did not even have to be *convicted* of a crime in order to lose the benefit of the negotiated plea, but merely to *commit* a crime. Here, as in *People v. Rabanales* (2008) 168 Cal.App.4th 494, "the plea agreement contains no express term guaranteeing defendant a right to be tried and convicted by a jury of a new criminal offense in a separate case before the trial court in this case could find him in violation of his [*Cruz* ] waiver." (See *id.*, at pp. 505-506.) Here, defendant never requested a finding beyond a reasonable doubt. In fact, as we have noted, counsel referenced the lesser standard; further, the need of such finding is not supported by the language of the agreement.

In *Rabanales*, unlike in this case, there *was* a paragraph stating that any violation of the *Cruz* waiver would be decided by a preponderance of the evidence. Defendant put an "X" in the box next to that paragraph, seeming to negate that term. The *Rabanales* court concluded that the "X" was inadvertent because deviation from the standard terms was not discussed on the record and it was not a material condition for the agreement. (*People v. Rabanales, supra*, 168 Cal.App.4th at pp. 505-508.) The court opined that the defendant would have made a clear record if he intended to preserve his right to a jury trial on the violations. Further, and "[m]ost tellingly," the defendant did not request a jury finding on the violation beyond a reasonable doubt in subsequent hearings on the violation. (*Id*. at pp. 507-508.) Similarly, here defendant never requested a jury finding or a finding beyond a reasonable doubt, either at the time of his plea, his hearing on the *Cruz* violation, or at his sentencing. Such findings were simply not terms of the agreement. Further, counsel confirmed orally that preponderance of the evidence was the standard.

We conclude the trial court did not err in sentencing defendant to three years for assault with force likely to cause great bodily injury (§ 245, subd. (a)(4)), in accordance with defendant's valid *Cruz* waiver. Accordingly, we do not need to address defendant's additional requests.

11

## DISPOSITION

The judgment is affirmed.

_____/s/_____
Duarte, J.

We concur:

_____/s/_____
Mauro, Acting P. J.

_____/s/_____
Murray, J.

12